UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MALAD BALDWIN, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>JAMES COLLEY, et al.,<br><br>    Defendants. | Case No. 15-cv-02762-KAW<br><br>**AMENDED ORDER[1] GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 10 |

The City of Antioch, the Antioch Police Department, and Officers James Colley and Casey Brogdon ("Defendants") move to dismiss Malad Baldwin's and Kathryn Wade's ("Plaintiffs") complaint. Plaintiffs oppose the motion, which is now fully briefed. On September 29, 2015, the Court deemed the motion suitable for disposition without hearing Civil Local Rule 7-1(b) and vacated the hearing set for October 1, 2015. For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART WITH LEAVE TO AMEND.

## I.   BACKGROUND

### A.   Factual background

At approximately 4:30 p.m. on April 28, 2014, Malad Baldwin ("Baldwin") was asleep in the passenger seat of his mother's car. (Compl. ¶ 11, Dkt. No. 1.) The car was parked in front of his family's home on Berryessa Court in Antioch, California, and the engine was off. (*Id.*) Baldwin was wearing headphones and a baseball cap pulled down over his eyes to block sunlight. (*Id.*) He was sitting with the seat reclined as he waited for his mother and brother, who were inside "preparing for a scheduled excursion to a local hospital." (*Id.*)

---

[1] This order is amended to add the deadline for the filing of the amended complaint, which shall be due within 14 days of this amended order.

1    Around the same, Officers James Colley ("Colley") and Casey Brogdon ("Brogdon") were
2  responding "'to a report of an unidentified black male on Berryessa Court who was carrying a
3  bottle of alcohol and yelling at people.'" (*Id.* ¶ 12.)

4    Baldwin had been asleep for about fifteen to twenty minutes when he was "abruptly . . .
5  awakened by unnecessarily rough manhandling by" Officer Colley, who opened the passenger
6  door and violently "yank[ed] Plaintiff's body from the vehicle." (*Id.* ¶ 13.) Officer Colley
7  immediately slammed Plaintiff against the car, handcuffed him, and slammed him onto the
8  pavement "face and head first." (*Id.* ¶ 14.) Baldwin lost consciousness. (*Id.*)

9    The next thing Baldwin remembers is Officer Brogdon placing his knee on the back of his
10 neck and punching him in the head, face, and body. (*Id.* ¶ 15.) At the same time, Officer Colley
11 was repeatedly striking Baldwin "with a large metal police-issued flashlight with extremely
12 forceful blows to the anal/genital area which had been exposed by forcefully separating Plaintiff's
13 legs while Plaintiff lay face down." (*Id.* ¶ 16.) Baldwin again lost consciousness temporarily due
14 to the pain of the strikes. (*Id.*)

15   When Baldwin regained consciousness, at least one of the officers was pulling his wrists,
16 legs, and feet. (*Id.* ¶ 17.) Because he had just had surgery on his left wrist, he yelled, "My hand!
17 I'm hurt! I just had surgery." (*Id.*) The officers told Baldwin to "'Shut the fuck up!'" and "'Quit
18 Resisting.'" (*Id.*)

19   Kathryn Wade ("Wade"), Baldwin's mother, exited her home upon hearing the commotion
20 and observed the officers' conduct. (*Id.* ¶¶ 3, 18.) When she pleaded with the officers to "stop
21 beating her son, and in particular to be careful with his left wrist due to his recent surgery," Officer
22 Colley told her to "'Shut the fuck up!'" and "'Go back inside the house.'" (*Id.* ¶ 18.) When she
23 explained that "she needed the assistance of a cane to walk," the officers ignored her, repeating
24 that she needed to go back inside. (*Id.* ¶ 19.) This caused her to fall and sustain physical injuries.
25 (*Id.*) Wade also experienced severe emotional and mental distress, having suffered the extreme
26 shock of observing her son's beating. (*Id.* ¶ 20.)

27 ///
28 ///

2

### B.     Procedural background

On June 19, 2015, Plaintiffs[2] filed their complaint against Officers Colley and Brogdon, sued in their official and individual capacities, the Antioch Police Department ("Department"), and the City of Antioch ("City").  (Compl. ¶¶ 9, 10.)  Baldwin asserts (1) a § 1983 claim against Officers Colley and Brogdon "for violation of constitutional rights under color of state law" ("Count I");[3] (2) a claim for assault against Officers Colley and Brogdon ("Count II"); (3) a claim for battery against Officers Colley and Brogdon ("Count III"); (4) a § 1983 claim against the Department and the City based on established policies and customs exhibiting deliberate indifference to individuals' constitutional rights ("Count IV"); (4) a claim for "Respondeat Superior" against the Antioch Police Department and the City ("Count V"), and (5) a claim for "Liability to Bystander for Emotional Distress against Each and Every Defendant" ("Count VI").

Defendants moved to dismiss Counts IV, V, and VI of the complaint on August 18, 2015. (Defs.' Mot. to Dismiss ("Defs.' Mot."), Dkt. No. 10.)  Plaintiffs filed their opposition to the motion on September 1, 2015.  (Pls.' Opp'n to Defs.' Mot. to Dismiss ("Pls.' Opp'n"), Dkt. No. 16.) Defendants' reply followed on September 8, 2015.  (Defs.' Reply in Support of Mot. to Dismiss ("Defs.' Reply"), Dkt. No. 18.)  On September 29, 2015, the Court deemed the motion suitable for disposition without hearing and vacated the October 1, 2015 hearing.  (Sept. 29, 2015 Order, Dkt. No. 22.)

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted.  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation

---

[2] Both Plaintiffs proceed in forma pauperis.  July 1, 2015 Order, Dkt. No. 7.

[3] Plaintiffs have captioned their claims as separate "counts."  The Court uses the same designation here for consistency and ease of reference.

1   omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or
2   there is an absence of "sufficient factual matter to state a facially plausible claim to relief."
3   *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing
4   *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation
5   marks omitted).

6       A claim is plausible on its face when a plaintiff "pleads factual content that allows the
7   court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
8   *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate
9   "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action
10  will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

11      "Threadbare recitals of the elements of a cause of action" and "conclusory statements" are
12  inadequate. *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th
13  Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat
14  a motion to dismiss for failure to state a claim."). "The plausibility standard is not akin to a
15  probability requirement, but it asks for more than a sheer possibility that a defendant has acted
16  unlawfully . . . When a complaint pleads facts that are merely consistent with a defendant's
17  liability, it stops short of the line between possibility and plausibility of entitlement to relief."
18  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

19      Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no
20  request to amend is made "unless it determines that the pleading could not possibly be cured by
21  the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations
22  omitted).

23      **III.   DISCUSSION**

24      Defendants move to dismiss Counts IV, V, and VI for failure to state a claim upon which
25  relief can be granted. (Defs.' Mot. at 3.) They also seek the Department's dismissal, it being a
26  subdivision of the City and thus a redundant party. (*Id.* at 4, 5.) Defendants contend that
27  Plaintiffs have not adequately alleged a basis for *Monell* liability, that the claims for respondeat
28  superior and NIED fail for lack of a cognizable legal theory, and that leave to amend is futile in

4

this case. (*Id.* at 5, 10)

Plaintiffs concede that the Department is a redundant party and do not oppose its dismissal from this case. (Pls.' Opp'n at 8.) Plaintiffs also concede that Count V should be dismissed. (*Id.* at 13.) Accordingly, Defendants' motion is GRANTED AS UNOPPOSED in these respects. Plaintiffs, however, oppose the motion as to Counts IV and VI, claiming that each count has been sufficiently pled to survive the instant motion. (*Id.* at 9, 13.) The Court addresses each count in turn.

**A.      Whether Plaintiffs have sufficiently alleged a basis for municipal liability**

A municipality or governmental entity cannot be found liable under 42 U.S.C. § 1983 on a theory of respondeat superior. *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 691 (1978). Rather, in order to hold a municipality liable for an officer's conduct under *Monell*, a plaintiff must show "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (internal quotations and citations omitted; modifications in original).

"Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *Id.* at 390.

In their complaint, Plaintiffs allege that:

> 33. Prior to April 28, 2014, the Antioch Police Department and the City of Antioch developed and maintained policies and/or customs exhibiting deliberate indifference to the constitutional rights of persons in the City of Antioch, which caused the violation of Plaintiff's rights.
> 34. It was the policy and/or custom of the Antioch Police Department and the City of Antioch to inadequately supervise and train its police officers, including Defendants Officer James Colley and Officer Casey Brogdon, thereby failing to adequately discourage constitutional violations by its police officers.
> 35. It was the policy and/or custom of the Antioch Police Department and

5

the City of Antioch not to require the use of body cameras by its officers in the field.

36. As a result of the above-described policies and/or customs, police officers of the Antioch Police Department, including Defendant James Colley, believed that their actions would not be properly monitored and that police misconduct would not be properly investigated.

37. As a result of the above-described policies and/or customs, police officers of the Antioch Police Department, including Defendant James Colley, believed that unnecessary force could be used with impunity in the absence of video recording of their use [*sic*] force.

38. The above-described policies and/or customs demonstrate a deliberate indifference on the part of the Antioch Police Department and the City of Antioch to the constitutional rights of persons within the City of Antioch, and were the direct and proximate cause of the violations of Plaintiffs' rights alleged herein.

(Compl. ¶¶ 33-38.)

In their opposition, Plaintiffs assert that the City had a policy of not requiring body cameras, that the City's failure to provide that equipment amounts to deliberate indifference to the constitutional rights of Baldwin and others, and that the policy was a moving force behind the Fourth Amendment violation complained of here. (Pls.' Opp'n at 9-11.) These arguments are cursory, mainly consisting of lengthy quotations to cases that explain *Monell* liability generally. (*See id.*) Plaintiffs have not cited any authority that squarely supports their position, nor have they offered any secondary sources that would make a compelling case that an extension of existing law is warranted here.[4] Absent any such support, the Court finds that Plaintiffs' cannot establish, as a matter of law, that the City's non-use of body cameras provides a basis for *Monell* liability.[5]

---

[4] The parties devote a small part of their briefs to another case pending before this court—*Mabutas v. Colley*, 14-cv-03796-KAW. Defendants claim that in that case, Plaintiffs' counsel advanced an identical argument regarding body cameras, and the Court "rightly denied allowing [it] to go forward." Defs.' Mot. at 9. In their opposition, Plaintiffs maintain that "[c]ounsel's assertion is completely opposite to [the Court's] ruling," and that "during oral argument on that issue at the Case Management Conference on August 4, 2015, [the Court] at least intimated approval of the legal reasoning, which is the same reasoning here." Pls.' Opp'n at 13. To be clear, the *Monell* claim in *Mabutas*, whatever its basis, remains live at least in part in that case because Defendants did not move to dismiss it. *See Mabutas v. Colley*, 14-cv-03796-KAW, Oct. 19, 2014 Order at 2. The negligence claim in that case, also premised on the non-use of body-cameras, was dismissed without leave to amend based on the plaintiff's concession that it could not survive the defendants' motion to dismiss. *See id.* It is unclear why Plaintiffs' counsel believes that the Court addressed the issue at an August 4, 2015 case management conference. When this issue was raised at an April 28, 2015 case management conference, the Court did not make a substantive ruling. Whatever discussion took place during a case management conference in that case, then, has no bearing here.

[5] Because the Court agrees with Defendants that Plaintiffs' theory of *Monell* liability fails as a matter of law, it need not address Defendants' remaining arguments.

6

The Court is unpersuaded by the argument that "recurring situations in Antioch and across the nation have made it plainly clear that police misconduct is highly predictable in the absence of body-cams." Rather, as Defendants contend, requiring officers to wear body cameras "may be a commendable goal for a police department to strive for, should they have the necessary resources." *See also* Howard M. Wasserman, Moral Panics and Body Cameras, 92 Wash. U. L. Rev. 831, 833 (2015) ("While body cameras are a good idea and police departments should be encouraged and supported in using them, it is nevertheless important not to see them as a magic bullet."). The fact that some police departments are implementing the technology does not, by default, mean that the failure to do so must be a basis for *Monell* liability. As one academic has rightly noted, "We can only speculate whether recording will deter bad behavior and incentivize good behavior by police and the public. The technology and its use by actual police are too new to know its true effects." Moral Panics and Body Cameras, 92 Wash. U. L. Rev. at 837. It cannot be said, then, that the failure to use body cameras constitutes deliberate indifference to constitutional rights as a matter of law.

Accordingly, to the extent Count IV is based on the City's position on body cameras, it is subject to dismissal without leave to amend. Leave to amend is granted, however, to the extent Plaintiffs may be able to allege facts sufficient to state a viable theory of *Monell* liability separate and apart from the non-use of body cameras.

### B. Whether Wade has a viable claim for "liability to bystander for emotional distress"

Defendants argue that Wade's claim for negligent infliction of emotional distress ("NIED") is subject to dismissal for two reasons. (Defs.' Mot. at 11, 12.) First, Defendants argue that state law immunities insulate the individual officers and the City from liability. (*Id.* at 11, 12.) Second, Defendants argue that Wade has failed to allege sufficient facts to state a plausible claim for relief. (*Id.* at 11, 12.) The Court addresses each argument in turn.

#### 1. State law immunities

Defendants contend that Wade's NIED claim fails because public entities are not liable for their own negligent conduct or omission to the same extent as a private person or entity. (Defs.' Mot. at 11.) Defendants also maintain that the individual officers enjoy immunity under

California Government Code section 821.6.  (*Id.* at 12.)

In opposition, Plaintiffs argue that Wade's NIED claim is not based on witnessing her son's arrest but on witnessing the illegal beating the officers allegedly engaged in to effect that arrest. (Pls.' Opp'n at 13-14).  As Plaintiffs point out, an arrest can be accomplished without battery.  (*Id.* at 14.)

California Government Code section 821.6 provides that: "a public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."  "The provision's principal function is to provide relief from malicious prosecution."  *Blankenhorn v. City of Orange*, 485 F.3d 463, 487-88 (9th Cir. 2007) (citation omitted).  "The statute also 'extends to actions taken in preparation for formal proceedings,' including actions 'incidental to the investigation of crimes.'"  *Id.* at 488 (quoting *Amylou R. v. Cty. of Riverside*, 28 Cal. App. 4th 1205, 1209-10 (1994)).  "Even so, section 821.6, as it applies to police conduct, is limited to actions taken in the course or as a consequence of an investigation."  *Id.*

In this case, the Court declines to hold that the alleged use of excessive force constitutes conduct in the course of "instituting or prosecuting any judicial or administrative proceeding" within the meaning of California Government Code section 821.6.  *See Warren v. Marcus*, 78 F. Supp. 3d 1228, 1249-50 (N.D. Cal. 2015) ("Defendant's conduct at issue in this case—alleged excessive force and unlawful seizure—is not the sort of conduct to which section 821.6 immunity has been held to apply.") (internal quotations and citation omitted).  The two cases Defendants cite in their motion do not mandate a contrary result.  *See Amylou R.*, 28 Cal. App. 4th at 322 (county employees immune under section 821.6 though they took rape and attempted murder victim to the crime scene against her will and later told neighbors that she was lying about what happened); *Duffy v. San Francisco Police Dep't*, No. C-02-2250 VRW, 2005 WL 474856, at *3 (N.D. Cal. Feb. 25, 2005) ("If the officers used unreasonable force in committing the tort of intentional or negligent infliction of emotional distress, then they are not immune.").

Accordingly, section 821.6 does not insulate the individual officers from liability on Wade's NIED claim.  While Defendants correctly state that public entities are not liable for their

own negligent conduct or omission to the same extent as a private person or entity, the City may nonetheless face vicarious liability on Wade's NIED claim. *See* Cal. Gov't Code 815.2; *Zelig v. Cty. of Los Angeles*, 27 Cal. 4th 1112, 1127 (2002).

Thus, to the extent Defendants seek dismissal of Wade's NIED claim based on California Government Code section 821.6, their motion is DENIED. To the extent Defendants' seek dismissal of the claim based on Wade's failure to adequately allege facts to support it, the motion is also DENIED for the reasons discussed immediately below.

### 2. Sufficiency of allegations

"Negligent infliction of emotional distress is a form of the tort of negligence, to which the elements of duty, breach of duty, causation and damages apply." *Huggins v. Longs Drug Stores Cal., Inc.*, 6 Cal. 4th 124, 129 (1993). The existence of a duty is a question of law. *Id.* (citation omitted).

NIED includes "bystander" cases and "direct victim" cases. *Id.* "The distinction between the 'bystander' and the 'direct victim' cases is found in the source of the duty owed by the defendant to the plaintiff." *Burgess v. Superior Court,* 2 Cal. 4th 1064, 1072 (1992). "'Bystander" claims are typically based on breach of a duty owed to the public in general." *Huggins*, 6 Cal. 4th at 129 (citation omitted). Liability for such claims "is premised upon defendant's violation of a duty not to negligently cause emotional distress to people who observe conduct which causes harm to another." *Burgess*, 2 Cal. 4th at 1073.

To succeed on a NIED claim under the bystander theory, a plaintiff must show that she: (1) is closely related to the injured victim, (2) was present at the injury-producing event and aware that it was causing injury to the victim, and (3) suffered serious emotional distress beyond that typically anticipated in a disinterested witness. *Thing v. La Chusa*, 48 Cal. 3d 644, 647 (1989).

In the complaint, Wade alleges that she, "as the mother of Plaintiff Malad Baldwin, is a close personal relative and is among the potential plaintiffs who can be compensated for the emotional distress of witnessing the injuries to Plaintiff Malad Baldwin." (Compl. ¶ 47.) She also alleges that she "was immediately present and witnessed the injuries to her son," and that, "[a]s a direct and proximate result of witnessing said injuries, Plaintiff Kathryn Wade suffered severe

emotional and mental distress, with accompanying physical manifestations." (*Id.* ¶¶ 48-49.)

Defendants argue that Wade's repeated assertions that she experienced severe emotional and mental distress are insufficient. Wade, however, has described the events that have given rise to her emotional and mental distress, and as Plaintiffs' argue, "she was the mother of the victim of the beating and was helpless to stop the attack on her son." The allegations in the complaint, then, at least support an inference that the helplessness she felt as she watched her son being beaten by officers and the resulting shock she suffered from witnessing that event was sufficiently serious to support a claim for NIED.

Accordingly, Defendants' motion to dismiss is DENIED as to Wade's NIED claim.

### IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART WITH LEAVE TO AMEND. Plaintiffs shall file their amended complaint within 14 days of this amended order.

IT IS SO ORDERED.

Dated: 10/07/2015

_____
KANDIS A. WESTMORE
United States Magistrate Judge

10