United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MALAD BALDWIN, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>JAMES COLLEY, et al.,<br><br>　　　　　Defendants. | Case No. 15-cv-02762-KAW<br><br>**ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO DEFENDANT JAMES COLLEY**<br><br>Re: Dkt. No. 47 |

　　　　Plaintiffs Malad Baldwin and Kathryn Wade brought the instant lawsuit against Defendants James Colley and Casey Brogdon, alleging: (1) a 42 U.S.C. § 1983 claim based on "violation of constitutional rights under color of state law,"[1] (2) assault, (3) battery, and (4) negligent infliction of emotional distress ("NIED") as to Plaintiff Wade. (Compl., Dkt. No. 1.) Defendants now move for summary judgment on Plaintiff Wade's NIED claim. (Defs.' Mot., Dkt. No. 47.) Upon consideration of the parties' filings, as well as the arguments presented at the April 6, 2017 motion hearing, and for the reasons set forth below, Defendants' motion for summary judgment as to the NIED claim against Defendant Colley is DENIED. The Court will issue a separate order as to the NIED claim against Defendant Brogdon.

---

[1] Notably, the Complaint fails to specify which constitutional rights of Plaintiffs were violated. Nor does it state which Plaintiff's constitutional rights were violated. The Court assumes, however, that Plaintiff Malad Baldwin intends to assert Fourth Amendment excessive force claims, and that Plaintiff Kathryn Wade is not. (*See* Dkt. No. 28 at 4 (joint case management conference statement, indicating that Plaintiffs are alleging "42 U.S.C. § 1983 Fourth Amendment Violation").)

# I. BACKGROUND

## A. Factual Background

On April 28, 2014, Plaintiff Baldwin was allegedly asleep in the passenger seat of a car when he was awakened by Defendants Colley and Brogdon. (*See* Compl. ¶¶ 11, 13.)[2] Plaintiff Baldwin alleges that he was slammed against the vehicle, handcuffed, and then slammed onto the pavement by Defendant Colley. (Compl. ¶ 14.)

During this time, Plaintiff Wade -- Plaintiff Baldwin's mother -- was inside the house. She heard a "boom" and went outside to find Defendants on top of Plaintiff Baldwin, who was unconscious. (Blechman Decl., Exh. B, "Wade Dep.," at 97:3-9, 15-16.) One Defendant[3] was on Plaintiff Baldwin's neck, bending his hands back, while the other Defendant was on Plaintiff Baldwin's legs, leaning his legs up on his back. (Wade Dep. at 97:16-20.) Plaintiff Wade did not see Defendants handcuff Plaintiff Baldwin, or the events that resulted in Plaintiff Baldwin being on the ground. (Wade Dep. at 98:24-99:13.) Plaintiff Wade saw blood coming from Plaintiff Baldwin's nose and mouth, and he appeared to be knocked out. (Wade Dep. at 101:1-7.) Plaintiff Wade and her son Lawrence called for Plaintiff Baldwin to wake up; Plaintiff Baldwin then started moving and saying, "My hands. My hands hurt." (Wade Dep. at 101:11-20.) When Plaintiff Baldwin started moving his hand, Defendant Colley got off of Plaintiff Baldwin, flung Plaintiff Baldwin's legs open, and pulled out his flashlight. (Wade Dep. at 103:16-20.) Defendant Colley then began beating Plaintiff Baldwin between his buttocks with the flashlight, striking him five times. (Wade Dep. at 103:20-23, 104:24-25.) Defendant Brogdon did not strike Plaintiff Baldwin; instead, Defendant Brogdon remained on Plaintiff Baldwin's neck, pulling his hands back. (Wade Dep. at 108:9-13.) Plaintiff Wade saw Plaintiff Baldwin scream and choke, and blood flew from his face before he went unconscious again. (Wade Dep. at 103:24-104:1, 106:8-9, 106:22-107:8.) Plaintiff Wade feared Plaintiff Baldwin was dead. (Wade Dep. at 107:9-12.) When Plaintiff Wade asked Defendants why they were doing that to her son, and asked them to

---

[2] Because Plaintiffs provide no evidence in support of the complaint's allegations, the Court relies on the complaint for the facts that are not at issue in this motion.
[3] This officer appears to be Defendant Brogdon.

2

call an ambulance, she was repeatedly told to "Shut the fuck up." (Wade Dep. at 107:24-108:4.)

Upon seeing Plaintiff Baldwin gag and go down, Plaintiff Wade fell to the ground and "lost it." (Wade Dep. at 117:20-24.) Plaintiff Wade believes she fainted, and states that she "just felt lifeless." (Wade Dep. at 118:2-5.) Plaintiff Wade also felt "dizzy," "had a nauseated, nasty taste in [her] mouth, thinking that [she] was going to have to bury [her] child." (Wade Dep. at 182:1-2.) Plaintiff asserts that she was most affected when she saw the blood and when Defendant Colley "got off of [Plaintiff Baldwin] and just beat him between his butt." (Wade Dep. at 199:14-18.) Following the incident, Plaintiff Wade states that she had nightmares that have "impacted [her] way of thinking, [her] sleep, because it's like [she is] living it again . . . ." (Wade Dep. at 182:7-12.) Plaintiff further states that she was told she has post-traumatic stress and anxiety, and that she has mood swings and does not like to be around people as a result of what happened to Plaintiff Baldwin. (Wade Dep. at 190:15-22.)

Plaintiff Baldwin's medical records from his hospital visit that same day do not indicate any trauma to his buttocks or genital area. (Blechman Decl., Exh. F at 165.)

### B. Procedural Background

On June 19, 2015, Plaintiffs brought the instant suit against the Antioch Police Department and the City of Antioch,[4] as well as Defendants Colley and Brogdon. Defendants then brought a motion to dismiss, including dismissal of the NIED claim. (Mot. to Dismiss Ord. at 3, Dkt. No. 24.) The Court denied the motion to dismiss the negligent infliction of emotional distress claim, finding that California Government Code § 821.6 did not insulate the individual officers from liability. (*Id.* at 8.) Further, the Court found that to the extent Defendants challenged Plaintiff Wade's allegation of severe emotional distress, there were sufficient allegations in the complaint to "at least support an inference that the helplessness she felt as she watched her son being beaten by officers and the resulting shock she suffered from witnessing that event was sufficiently serious to support a claim for NIED." (*Id.* at 10.)

---

[4] The parties agreed that the Antioch Police Department was a redundant party that should be dismissed, and later stipulated to dismissing the City of Antioch. (Mot. to Dismiss Ord. at 5, Dkt. No. 24; Dkt. No. 32.)

3

1    Defendants now move for summary judgment on Plaintiff Wade's NIED claim. On
2 February 28, 2017, Plaintiffs filed their opposition to Defendants' motion for summary judgment.
3 (Plfs.' Opp'n, Dkt. No. 49.) On March 7, 2017, Defendants filed their reply. (Defs.' Reply, Dkt.
4 No. 50.) The Court held a hearing on April 6, 2017; at the hearing, Plaintiff's counsel failed to
5 appear, requiring the Clerk of the Court to contact counsel. Counsel then explained that he had
6 wrongly believed the hearing was at a later time.[5] Plaintiff's counsel was required to participate in
7 the hearing by court speaker phone -- not CourtCall, which is the proper method for appearing by
8 phone.

## II. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when, after adequate discovery, there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law. *Id.*; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Southern Calif. Gas. Co. v. City of Santa Ana,* 336 F.3d 885, 888 (9th Cir. 2003).

On an issue where the nonmoving party will bear the burden of proof at trial, the moving party may discharge its burden of production by either (1) "produc[ing] evidence negating an

---

[5] Despite counsel's excuses for failing to appear, his client, Ms. Wade, was present and visibly upset. The Court is concerned about the way Plaintiff's counsel is handling this case and admonishes Plaintiff's counsel to get his act together for future filings and hearings, in order to satisfy his professional obligations to his client.

4

essential element of the nonmoving party's case" or (2) after suitable discovery, "show[ing] that the nonmoving party does not have enough evidence of an essential element of its claim or defense to discharge its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000); *see also Celotex*, 477 U.S. at 324-25.

Once the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See* Fed. R. Civ. P. 56(e); *Anderson,* 477 U.S. at 250. "A party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001). "Instead, the non-moving party must go beyond the pleadings and by its own evidence set forth specific facts showing that there is a genuine issue for trial." *Id.* (citations and quotations omitted). The non-moving party must produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NMS Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of material fact to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Electronics Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

In deciding a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson,* 477 U.S. at 255; *Hunt v. City of Los Angeles,* 638 F.3d 703, 709 (9th Cir. 2011).

### III. DISCUSSION

#### A. Evidentiary Objections

As an initial matter, Defendants object to Plaintiffs' "Relevant Facts" section, as Plaintiffs make no citations to the record and produce no evidence in support, such as declarations or exhibits. (Defs.' Reply at 9.) Defendants also object to any factual assertions made in Plaintiffs' opposition, again due to the failure to cite to the record or produce evidence in support. (*Id.* at 9-10.) The Court agrees that it is not appropriate to consider any facts or assertions that lack evidentiary support. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the

record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact"); Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record").  Here, Plaintiffs failed to provide any evidence to support their opposition to the motion.  Therefore, the Court considers only the facts and evidence contained in Defendants' submissions.

In reviewing this evidence, the Court emphasizes that it is not the role "of the district court[] to scour the record in search of a genuine issue of triable fact.  We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal quotation omitted).  Relying on this principle, courts in this district have explained that a "[d]efendant's motion [for summary judgment] could arguably be granted based solely on [the p]laintiff's failure to cite to the evidence or point out any triable issues of fact." *Pimentel v. Wells Fargo Bank, N.A.*, Case No. 14-cv-5004-EDL, 2016 U.S. Dist. LEXIS 170504, at \*13-14 (N.D. Cal. Dec. 6, 2016).  Thus, the Court could conceivably have granted Defendants' motion for partial summary judgment based solely on Plaintiffs' failure to provide or cite to evidence in the record.  In the interests of justice, however, the Court will exercise its discretion to review the entirety of the documents provided by Defendants, particularly because the record excerpts were not substantial. *See Valero v. S.F. State Univ.*, Case No. 12-cv-4744-TEH, 2014 WL 1339618, at \*4 (N.D. Cal. Apr. 2, 2014) (explaining that the court conducted a "thorough review" of the record, even where the plaintiff had failed to offer any evidence in support of her argument that she was treated differently from others similarly situated).  The Court forewarns Plaintiff's counsel, however, that the Court will not be going to such lengths in the future.

**B.  Negligent Infliction of Emotional Distress**

"Negligent infliction of emotional distress is a form of the tort of negligence, to which the elements of duty, breach of duty, causation and damages apply." *Huggins v. Longs Drug Stores*

6

*Cal., Inc.*, 6 Cal. 4th 124, 129 (1993). NIED claims can be categorized as "bystander" cases and "direct victim" cases. *Id.* To succeed on a NIED claim under the bystander theory, a plaintiff must show that she:

> (1) is closely related to the injury victim, (2) is present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim and, (3) as a result suffers emotional distress beyond that which would be anticipated in a disinterested witness.

*Thing v. La Chusa*, 48 Cal. 3d 644, 647 (1989).

Here, the parties dispute whether Plaintiff Wade can establish the second and third prongs.

### i. Contemporaneous Awareness of the Injury-Causing Event and Injury

In *Thing*, the California Supreme Court made clear that to recover on a bystander theory, the plaintiff must "contemporaneously observe[] both the event or conduct that causes serious injury to a close relative and the injury itself." 48 Cal. 3d at 667. The California Supreme Court explained that the reason for this limitation is to impose "[g]reater certainty and a more reasonable limit on the exposure to liability for negligent conduct . . . by limiting the right to recover for negligently caused emotional distress . . . ." *Id.* at 666. In so concluding, the California Supreme Court rejected cases such as *Archibald v. Braverman*, 275 Cal. App. 2d 253 (1969), and *Nazaroff v. Superior Court*, 80 Cal. App. 3d 553 (1978), where lower courts had concluded that "visual perception of the accident was not required." *Id.* at 656-57. "Thus, under controlling [California] Supreme Court precedent the absence of contemporaneous sensory awareness of the causal connection between the injury-producing event and the resulting injury precludes recovery." *Ra v. Superior Court*, 154 Cal. App. 4th 142, 149 (2007) (internal quotation and modification omitted).

Here, Defendants argue that Plaintiff Wade cannot establish that she was contemporaneously aware of the injury-causing event. Specifically, by the time Plaintiff Wade came out of the house, Plaintiff Baldwin was already handcuffed and on the ground, and had blood coming out of his nose or mouth. (Wade Dep. at 98:7-9, 101:3-7.) Plaintiff Wade further admitted at the deposition that she had not seen what happened to get Plaintiff Baldwin in that position. (Wade Dep. at 99:11-13.) Thus, Defendants contend that Plaintiff Wade was not contemporaneously aware of the injury that caused blood to appear on Plaintiff Baldwin's face, as

7

that blood was already present when she first arrived at the scene. (Defs.' Mot. at 7.)

Plaintiffs respond that per *Archibald* and *Nazaroff*, Plaintiff Wade can still recover for emotional distress suffered from seeing the injuries that occurred seconds before she arrived at the scene. (Plfs.' Opp'n at 7-8.) As discussed above, however, the California Supreme Court rejected *Archibald* and *Nazaroff* when it made clear that a plaintiff was required to "contemporaneously observe[] both the event or conduct that causes serious injury to a close relative and the injury itself." *Thing*, 48 Cal. 3d at 667; *see also Bird v. Saenz*, 28 Cal. 4th 910, 916 (2002) ("We reinforced our conclusion by disapproving the suggestion in prior cases that a negligent actor is liable to all those persons who may have suffered emotional distress on viewing or learning about the injurious *consequences* of his conduct,' rather than on viewing the injury-producing event, itself. ([*Thing*, 48 Cal. 3d] at 668, italics added, disapproving *Nazaroff* . . . and *Archibald* . . . to the extent inconsistent with *Thing*.)"). Thus, Plaintiff was required to witness the event that caused the injury, *i.e.*, the blood on Plaintiff Baldwin's face, in order to bring a claim for NIED based on that injury. It is not enough that Plaintiff arrived after the injury had already occurred. To the extent that Plaintiff argues otherwise, the Court rejects this contention.

Plaintiffs next argue that Plaintiff Wade can recover in NIED because the "beating was still in progress." (Plfs.' Opp'n at 8.) Plaintiffs compare the case to *Ortiz v. HPM Corp.*, where the plaintiff found her husband trapped in a plastic injection molding machine, which was still running and exerting pressure on her husband. 234 Cal. App. 3d 178, 184 (1991). In *Ortiz*, however, the injury-producing event (the plaintiff's husband being trapped in a molding machine) was still ongoing when the plaintiff arrived at the scene; here, the action that produced Plaintiff Baldwin's injury of the blood on his face was completed when Plaintiff Wade arrived. While Plaintiff Wade witnessed Defendant Colley allegedly beat Plaintiff Baldwin with a flashlight, this was an action separate from whatever actions caused the blood on Plaintiff Baldwin's face. Thus, *Ortiz* is distinguishable in this case.

The Court finds, however, that there is sufficient evidence in the record that Plaintiff Wade saw Plaintiff Baldwin get beaten by Defendant Colley with a flashlight, causing Plaintiff Baldwin injury that Plaintiff Wade perceived. Specifically, Plaintiff Wade testified at her deposition that

when she came outside, she saw Plaintiff already on the ground, with Defendants on top of him. (Wade Dep. at 97:16-20.) She then personally witnessed Defendant Colley spread Plaintiff Baldwin's legs, before using a metal flashlight to beat Plaintiff Baldwin five times between his buttocks. (Wade Dep. at 103:20-24, 104:25-106:4.) During this beating, Defendant Brogdon remained on Plaintiff Baldwin's neck, pulling his hands back. (Wade Dep. at 108:9-13.) Plaintiff Wade then saw Plaintiff Baldwin scream and choke, and blood flew out of his face as he blacked out. (Wade Dep. at 103:24-104:3, 106:8-9.) Thus, Plaintiff Wade testified that she contemporaneously saw the injury-producing event -- the alleged beating of Plaintiff Baldwin with a flashlight -- and the injury, *i.e.*, Plaintiff Baldwin choking, blood flying out, and blacking out. These are separate injuries from the blood already on Plaintiff Baldwin's face when Plaintiff Wade first appeared on the scene. While Defendants argue that Plaintiff has produced no evidence of injury to Plaintiff Baldwin's buttocks and scrotum, there is still sufficient evidence regarding whether Plaintiff Wade witnessed Plaintiff Baldwin being injured, with such injuries including not only any harm to the buttocks area, but the choking, blood flying, and unconsciousness that allegedly occurred as a result of the beating with a flashlight, all while Plaintiff Brogdon remained on Plaintiff Baldwin's neck.

Therefore, the Court finds that there is sufficient evidence to create a question of fact regarding Plaintiff Wade's contemporaneous sensory awareness of the injury-producing event and the injury itself.

### ii. Serious Emotional Distress

Next, Defendants argue that Plaintiff Wade did not allege serious emotional distress specifically from observing Plaintiff Baldwin be struck with a flashlight during his arrest. (Defs.' Mot. at 8.) Specifically, Defendants contend that "Plaintiff cannot reasonably claim she believed her son may be dead as a result of being struck in the buttocks or genital area with a flashlight." (*Id.*)

The Court disagrees that there is insufficient evidence on the record to create a question of

fact regarding Plaintiff Wade's emotional distress.[6] In her deposition, Plaintiff Wade testified that when during the beating, she saw the blood spray out Plaintiff Baldwin's face, and watched Plaintiff Baldwin choke and go back down, she thought he was dead. (Wade Dep. at 106:22-107:10.) Upon seeing Plaintiff Baldwin "gag up, bl[o]w his stuff out, when he went down," Plaintiff Wade "just went down. [She] was gone. [She] was on the ground. Just . . . seeing him -- [she] thought he was dead." (Wade Dep. at 117:20-24.) Further, Plaintiff Wade's testimony is evidence that her emotional distress was beyond that which would be anticipated in a disinterested witness, as she stated: "I had a nauseated, nasty taste in my mouth, thinking that I was going to have to bury my child. I felt worse than Rodney King's mother when she had to see her son on video getting beat. Because I watched my son in person get beat in handcuffs and unconscious." (Wade Dep. at 182:1-6; *see also id.* at 199:6-10 ("I started seeing Dr. Brown, started going to this therapist and on this medicine after what happened to my son because I couldn't deal with the nightmares no more").)

In short, Plaintiff Wade's reaction was a direct result of observing the effects of the alleged beating on Plaintiff Baldwin. While Defendants may argue that the beating was limited to his buttocks or genital area, and attempt to limit the Court's consideration of Plaintiff Baldwin's injuries to that specific area alone, there is evidence in the record that the beating in that area caused a reaction including Plaintiff Baldwin screaming, choking, and losing unconsciousness, which in turn caused Plaintiff Wade's emotional distress. This is sufficient to create a question of fact that Plaintiff Wade suffered emotional distress specifically from watching Plaintiff Baldwin being beaten with the flashlight, and that emotional distress could be found by a reasonable jury to be beyond that which would be anticipated in a disinterested witness. The Court therefore DENIES the motion for summary judgment as to the NIED claim against Defendant Colley.

---

[6] In so concluding, the Court does not consider Plaintiff's arguments regarding "the feelings of helplessness and anguish that a biological mother would feel upon being forced to witness such a scene," or that "this was a proud, African-American family being attacked by white police officers in the climate of community distrust of police . . . [which] serv[ed] to amplify the degree of seriousness of the emotional distress she suffered." (Plfs.' Opp'n at 8.) As discussed above, Plaintiffs did not provide any evidence in support of these arguments, and therefore the Court cannot consider them. *See Thornhill Pub. Co.*, 594 F.2d at 738. The Court therefore relies solely on the excerpts of Plaintiff Wade's deposition provided by Defendants.

### IV. CONCLUSION

For the reasons stated above, the Court DENIES Defendants' motion for summary judgment as to the NIED claim against Defendant Colley. Again, the Court will resolve Defendants' motion for summary as to the NIED claim against Defendant Brogdon in a separate order.

The Court also finds it appropriate to REFER this matter to a magistrate judge for the purpose of conducting a settlement conference within the next 60 days. A separate referral order will be filed by the Court.

IT IS SO ORDERED.

Dated: April 11, 2017

KANDIS A. WESTMORE
United States Magistrate Judge